IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRENDA FIELLEN,

      Plaintiff,                               No. CIV S-09-2496 EFB

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                            ORDER
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed below, the court grants plaintiff's motion, denies defendant's motion, and remands the case for further proceedings.

I. BACKGROUND

      Plaintiff, born October 5, 1959, formally applied for DIB on August 19, 2004. Administrative Record ("AR") 13-14. Plaintiff's application alleged that she had been disabled since March 10, 2003. *Id.* at 14. Plaintiff's application was denied initially and upon reconsideration, and plaintiff requested an administrative hearing. *Id.* at 13. On January 10, 2007, a hearing was held before administrative law judge ("ALJ") Peter F. Belli. *Id.* at 18.

1

Plaintiff was represented by counsel at the hearing, and testified at the hearing, along with vocational expert Jeffrey Clark. *Id*. at 13.

The ALJ issued a decision on April 25, 2007, finding that plaintiff was not disabled.[1] *Id.* at 13-18. The ALJ made the following specific findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's bilateral carpal tunnel syndrome; status-post left carpal tunnel release; right shoulder impingement syndrome; obesity; degenerative disc disease at the L5-S1 level of the lumbar spine; mild osteoarthritis of both hips; and plantar fasciitis are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:
    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

    4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

    5. The undersigned finds claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

    6. The claimant has the following residual functional capacity: .[2]

    7. The claimant's past relevant work as an information system technician specialist II and clerk/library did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

    8. The claimant's medically determinable bilateral carpal tunnel syndrome; status post-left carpal tunnel release; right shoulder impingement syndrome; obesity; degenerative disc disease at the L5-S1 level of the lumbar spine; mild osteoarthritis of both hips; and plantar fasciitis do not prevent plaintiff from performing her past relevant work.

    9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)).

*Id.* at 17-18.

Plaintiff requested that the Appeals Council review the ALJ's decision. However, on July 2, 2009, the Appeals Council denied review, leaving the ALJ's decision as the "final decision of the Commissioner of Social Security." *Id.* at 5-7.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were

---

[2] The ALJ's decision left this finding blank. However, discussion of the residual functional capacity in the body of the opinion is as follows: "Despite the claimant's combined physical impairments, the undersigned finds that she can lift and carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk, with breaks, for six hours in an eight-hour day and sit, with breaks, for six hours in an eight-hour day. Nonexertionally, the claimant is limited to occasional climbing of ramps and stairs and occasional balancing, stooping, crouching or crawling; is precluded from any sort of climbing of ladders, ropes or scaffolds; must avoid concentrated exposure to extreme heat and humidity; and is limited to occasional handling." AR 16.

applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff contends that the ALJ erred by rejecting the opinions of her treating physician, Dr. Lloyd Rich, and examining psychiatrist, Dr. Michael Barnett.[3] The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.* To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ

---

[3] Plaintiff also contends that the ALJ failed to properly analyze her obesity and improperly discredited her testimony. As the court finds that the case must be remanded for further proceedings, it does not reach these arguments.

4

may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831. In addition, an ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

Dr. Rich, plaintiff's treating physician, opined that plaintiff could only lift or carry ten pounds occasionally and frequently due to her bilateral carpal tunnel syndrome, could stand/ walk less than two hours of an eight-hour workday because of right leg pain due to a 2004 automobile accident, could sit four hours of an eight-hour workday, needed to alternate sitting and standing every hour, could never climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger or feel, and had the following environmental restrictions: heights, moving machinery, temperature extremes, chemicals, and dust. AR 153-54. Rich stated that plaintiff had a "fair" prognosis. *Id.* at 154.

The ALJ discounted Rich's opinion as follows:

> The claimant's treating physician, Dr, Lloyd Rich, in his report of September 21, 2004, imposed work-related limitations due to carpal tunnel syndrome and leg pain which would preclude the claimant from performing the full range of even sedentary work (Exhibit 5F). Dr. Rich, an internist...cited the claimant's right leg pain since being struck by an automobile on June 26, 2004, [but] he conceded that she does not require an assistive device to walk.
>
> ...
>
> A March 2006 EMG/nerve conduction study was interpreted by Dr. Thomas Pattison, Diplomate, American Academy of Physical Medicine and Rehabilitation, was interpreted by him as positive for severe carpal tunnel syndrome on the right (Exhibit 13F, p. 19). However, this same study lead him to opine that the claimant has experienced significant improvement from her left carpal tunnel release in 2004 (Exhibit 13F, p. 19). Due to the claimant's complaints of persistent numbness in some fingers on her left hand, Dr. Pattison suggested that the claimant must be experiencing ongoing thoracic outlet

5

> syndrome. Significantly, Dr. Pattison noted that the numbness in her left fourth and fifth fingers seemed to be her primary complaint, despite the improvement shown on her recent EMG/ nerve conduction study (Exhibit 13F, p. 19). Dr. Pattison was also surprised by the claimant's reluctance to undergo a right carpal tunnel release, in light of the severe right-sided abnormalities shown on the EMG study versus the significant improvement shown on the left.
>
> ...
>
> ... Pursuant to the law of the Ninth Circuit Court of Appeals and Social Security Ruling 96-2p, the undersigned finds that Dr. Rich's opinion is not supported by any objective, clinical findings identified by him. Nor has he submitted any treatment records that would support his opinion of disability. Dr. Rich's opinion is clearly controverted by substantial evidence in the record; that is, the findings of Dr. Pattison who evaluated the claimant on several occasions and the claimant's March 2006 EMG/ nerve conduction study. Accordingly, Dr. Rich's opinion is not entitled to controlling weight or great deference.

AR 14-15. Thus, the ALJ gave three reasons for rejecting Rich's opinion: 1) he did not identify any objective, clinical findings that supported his opinion; 2) he did not submit any treatment records that supported his finding of disability; and 3) his opinion was controverted by Dr. Pattison's findings and the 2006 nerve conduction study.

As to the first reason, plaintiff argues that Rich did identify two objective clinical findings that supported his opinion–namely, plaintiff's carpal tunnel syndrome and the right leg pain caused by her auto accident. *See* Dckt. No. 20 at 27. But although Rich's opinion indicates that plaintiff's carpal tunnel syndrome prevents her from lifting or carrying more than ten pounds, and her right leg pain limits her ability to stand or walk, he left blank the sections of the form titled "What medical findings support your assessment?" under his assessed sitting and alternate sitting/ standing limitations. AR 153-54. Although the ALJ wrote that Rich did not identify "any" objective clinical findings that supported his opinion, he likely meant that Rich did not identify any such findings for some of his limitation assessments. To claim more is to overstate the case.

As to the ALJ's second reason, Rich did in fact submit treatment records that supported his finding of disability. The record contains treatment notes regarding her carpal tunnel syndrome; degenerative changes and a ganglion cyst to her right knee; a rotator cuff tear and

6

arthritis in her right shoulder; moderate bilateral sacroiliac joint osteoarthritis; mild hip arthritis; end state degenerative disc disease at L5-S1; and slight narrowing at the hip joint. *See* Pl's Br., Dckt. No. 20 at 27-28. The record contains a plentitude of treatment notes by Rich. *See* AR 193-208; 282-298. Although the ALJ apparently found that none of these treatment notes supported Rich's determination that plaintiff was disabled, he did not specifically explain this finding by pointing to the specific medical records that undercut the doctor's opinion. A bare general assertion that Rich's treatment records do not support his medical opinion of disability cannot be reconciled with the record here. Rich's opinion and medical findings contain multiple physical limitations and he has submitted dozens of pages of treatment records discussing multiple health problems, and there are no obvious discrepancies between the two. The unexplained and unsupported conclusory statement to the contrary does not constitute a specific, legitimate reason to reject Rich's opinion.[4]

Finally, the ALJ's third reason–that Rich's opinion was controverted by Dr. Pattison's findings and the 2006 nerve conduction study–is not a legitimate reason to discount all of Rich's opinion. Pattison's report and the study only discuss plaintiff's carpal tunnel syndrome, rather than all of her impairments, and thus could only possibly justify rejecting the portion of Rich's opinion regarding her lifting, carrying and handling limitations.[5]

---

[4] Defendant argues: "The commissioner may properly reject a physician's opinion that conflicts with his own treatment notes." Dckt. No. 26 at 8. This statement is inapplicable to this situation, as the ALJ made no such finding regarding Dr. Rich's opinion.

[5] Moreover, the medical findings in Pattison's report do not seem inconsistent with Rich's opinion regarding plaintiff's lifting, carrying and handling limitations; only Pattison's ultimate opinion differs from Rich's. Pattison found that plaintiff had severe carpal tunnel on the right, and experienced persistent numbness in some of the fingers on her left hand. *See* AR 241 ("the patient complains of rather severe dysfunction in both hands. About 55% of the dysfunction is in the right hand and 45% on the left...Things that increase the pain include...writing, folding clothes, using the hairdryer, washing her hair, typing, filing and clapping her hands"); 245 ("she developed some discomfort, numbness and tingling in the left fourth and fifth fingers immediately postoperative...I would tend to think she has a thoracic outlet type difficulty....her subjective complaints on the left side would seem to be much higher than one would expect."); 250 ("her reported dysfunction on the right side seems to be

Thus, two arguably legitimate reasons for rejecting Rich's opinion can be gleaned from the ALJ's opinion: that Rich did not identify the objective findings that supported his assessed sitting and alternate sitting/ standing limitations, and that his opinion regarding plaintiff's lifting, carrying and handling was inconsistent with Pattison's opinion that plaintiff's carpal tunnel syndrome alone, although severe on her right side, did not justify keeping her on disability. But none of the ALJ's reasons justify discrediting Rich's opinion that plaintiff was limited to standing and walking for less than two hours of an eight-hour workday.

Regardless of whether the ALJ failed to provide legally adequate reasons for rejecting Rich's opinion, it is clear that he did not provide such reasons for rejecting the uncontroverted opinion of Dr. Barnett, plaintiff's examining psychiatrist.

Barnett, a psychiatrist, wrote a summary of his independent medical evaluation of plaintiff on March 17, 2006. AR 266-70. He diagnosed plaintiff with panic attacks with agoraphobia, dysthymia, and obsessive compulsive disorder. *Id.* at 269. He wrote:

> ...there are specific job duties that this woman could not perform because of her mental condition. The number one problem is her frequent panic attacks that would severely disrupt her workday and keep her from performing or relating to other people. Also her obsessive and compulsive thinking and feelings would also interfere with her interpersonal interactions in performing job duties....I do believe, at this point in time without further psychiatric treatment...that this condition is permanent.

*Id.* at 269-70. Barnett further opined that plaintiff "has not been adequately treated for her panic attacks and/or her OCD and/or her depression," and that "her mental status exam performance is really quite well and this woman is quite intelligent. It is my opinion that there would be a good chance for her to recover psychiatrically (greater than 90 percent), if she were appropriately

---

compatible with her nerve conduction studies"). Thus, Pattison agreed that plaintiff suffered from severe carpal tunnel syndrome on the right side at least, which seems consistent with the manipulative limitations assessed by Rich. Only Pattison's opinion–that he did "not see a medical reason for keeping her on total temporary disability while she debates" whether to undergo surgery for her right-hand carpal tunnel syndrome–is arguably inconsistent with Rich's opinion. *Id.* at 239. Pattison's report does not address, except in passing, plaintiff's impairments other than her carpal tunnel syndrome.

treated." *Id.* at 269.  Regarding plaintiff's credibility, he wrote, "The member is cooperating with the examination.  I do not feel there is any exaggeration." *Id.* at 270.

In rejecting Barnett's opinion, the ALJ wrote:

> Nor does the claimant experience any significant work-related limitations due to a medically-determinable mental impairment.  In reaching this conclusion, the undersigned has rejected the opinion of Dr. Michael Barnett, a psychiatrist, who has indicated that the claimant has panic attacks with agoraphobia and dysthymia and unable to perform her past relevant work.  Dr. Barnett's opinion is clearly contradicted by his finding that claimant is quite intelligent and did very well on her mental status examination.

AR 16.  Thus, the ALJ only gave one reason for rejecting Barnett's opinion–that it was "clearly" contradicted by his finding that plaintiff was quite intelligent and did very well on her mental status examination.  But none of Barnett's diagnoses had anything to do with intelligence, and as plaintiff was not experiencing a panic attack at the time of the mental status examination, there was no reason to believe that she would perform poorly. *See* Merck Research Laboratories, *The Merck Manual of Diagnosis and Therapy* (18th ed. 2006), at 1674-75 ("A panic attack is the sudden onset of a discrete, brief period of intense discomfort or fear accompanied by somatic or cognitive symptoms," where cognitive symptoms include fear of dying, fear of going crazy or of losing control, and feelings of unreality, strangeness or detachment from the environment); 1676 ("Agoraphobia is fear of and anticipatory anxiety about being trapped in situations without a way to escape easily and without help if intense anxiety develops"); 1705 ("Low-level or subthreshold depressive symptoms are classified as dysthymia"); and 1720 ("Obsessive compulsive disorder is characterized by anxiety-provoking ideas, images or impulses (obsessions) and by urges (compulsions) to do something that will lessen that anxiety.").  Thus, the ALJ's sole reason for rejecting Barnett's opinion was not legitimate.

Defendant argues that as plaintiff only saw Barnett one time, "the evidence supports that his diagnosis of panic attacks was based merely on plaintiff's subjective complaints, which the ALJ properly discredited."  Dckt. No. 26 at 10.  But the ALJ did not give this as a reason for discrediting Barnett's opinion.  Although defendant may in hindsight be able to come up with

9

reasons why the ALJ might have properly discredited Barnett's opinion, that is not the relevant inquiry in this proceeding. *See Ceguerra v. Sec'y of Health & Human Services*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

IV. <u>CONCLUSION</u>

The ALJ failed to provide specific legitimate reasons for discounting plaintiff's treating physician's opinion. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. Defendant's cross-motion for summary judgment is denied;

3. The Clerk is directed to enter judgment in plaintiff's favor; and

4. The case is remanded for further proceedings consistent with this opinion.

DATED: March 8, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE